May it please the court, I'm John Minster. I represent Tom Deskins. I'd have said your name, but I didn't know exactly how to say it, and I'd have killed it. So go ahead. It's impossible to tell from the spelling, but at least we have minster cheese to harken back to. Yeah. I'd like to reserve three minutes for a butthole. And you can tell that doesn't work too well, but go ahead. I probably run out of time on my opening more often than not, but at least it's good to fly the flag. Mr. Deskins is appealing the grant of summary judgment to Trooper Hedstrom. He had also brought an action against the City of Bremerton officers based on the tasering, and that was settled, as you're aware from the briefing. So I'd like to focus in on what our case against Ms. Hedstrom was, and then feel free to interrupt and ask questions as we go along, as I will attempt to be brief. First, we're arguing that the initial stop of Mr. Deskins was invalid on two grounds. There's no reasonable suspicion? Correct. The driving that the, at least the driving the trooper observed included Mr. Deskins driving continuously in the left lane, and she said that she, in her depth, she pulled him over because he was driving in the left lane. It's a violation to drive in the left lane, period. Both sides have briefed the statutes, and quite frankly, both sides have an argument as to what the statutory scheme means. The statutes that I'm relying on... Well then, in that case, how can she be wrong? Well, and that's an excellent question, and I think the answer to that is, if you've got, you know, what we all know by virtue of hindsight is an innocent person going to work at a, you know, federal weapons facility. She doesn't know that. She doesn't know that, but if you've got... She doesn't know that. The question is which... She's out there at 4 o'clock in the morning and sees, and sees somebody who is alone on a double, on a four-lane highway, driving continuously in the left lane. She's behind him three car lengths. He doesn't pull over for her to pass, which is, you know, plainly a violate. I mean, certainly arguably a violation of that statute, sufficient to justify reasonable suspicion, isn't there? Isn't it? She was several car lengths behind him. There isn't any indication that until she, that he was aware of her presence, or that she signaled her presence, or hawked her... I'm not talking about the quickness of his stop now. I'm just talking about from her perspective, she's, she's putting a line, he's putting a line 10 miles under the speed limit, doesn't move over to let her proceed in the left-hand lane, assuming that she's just you or me. I mean, an ordinary mortal, not in a police vehicle, even. That's, that's a violation of the statute, isn't it? Arguably? Well, we have to look at each case on the facts. I don't think she... I just did. She was trying... She did not claim that she was trying to pass him, and that he blocked her way. She was following him to see if he was going to stay in the left lane or not. She was several car lengths behind. You know, normally, I mean, when I'm trying to pass somebody, I flash, honk my horn, or flash the lights if I want to pass him in the left lane. She didn't do any, either of those, because she was following him to see if he would drive in the right lane, period. So, he wasn't impeding her, as a police car, in traffic. Like I said, the statutory scheme goes both ways. The question is, which way do you go? If you're the court, who do you resolve the doubt in favor of? The guy who's the driver? Where there's statutes that say you can use the left lane? Sounds like you're arguing to the jury, rather than the court. We're talking about reasonable suspicion here, and we're talking... You're arguing that both arguments are good. And my colleagues just said, if both arguments are good, it's Well, here's where I come down on it. If the statutory scheme says it's legal to drive in the left... If one statute says it's legal for Mr. Deskins to drive in the left lane, and another statute, which the state side, which I sought to distinguish, says otherwise, you've got... She's got two sources of authority there. Does she have a reasonable suspicion when she doesn't have a clear mandate from the statutory scheme to either pull him over or not pull him over? I think because of the conflicts in the statutes, it is... In terms of... So your best argument is the reasonable suspicion? Oh, in the whole case? Yeah. No, I think the best argument in the whole case is probable cause. I'll get to that. All right, go there. Okay. And I will simply note that I also briefed the issue of lack of probable... lack of reasonable suspicion to pull him over for DUI, based on the statutes that the parties are arguing about. The first is the failure to stop statute. We contend that the trooper lacked probable cause to arrest Mr. Deskins under that, and that's the statute which provides... Even if probable cause were actually lacking on any of the three grounds, why, in your view, does the officer not have qualified immunity? Because at least, as in my survey, I don't come up, out of the universe of applicable law, with anything that says clearly that it wasn't obstructing a law enforcement officer for Deskins to act as he did, never mind pulling the other two grounds. And, of course, that's the state's best argument on the probable cause to arrest as well. Well, I know. I mean, so I'm looking to you for a reason why we should not pay attention to it. Okay. Question is what... how much notice is the officer supposed to have to show that a right or fact pattern is clearly established, or that certain facts observed equates a probable cause? Well, he doesn't respond repeatedly to instructions, does the opposite of what he's supposed to do, and persists in it for quite some time, behaving, at least from the officer's point of view, somewhat unusually. So why does... what authority do you have that says an officer lacks probable cause under those circumstances? And I look at Contreras and say, ah, that's almost exactly the same case as this, and it said there was a probable cause, and that's what he did. But, beyond that, how can there not be qualified immunity, at the least? Because the... under the facts of this case, as opposed to Contreras, there wasn't probable cause to arrest him for any of the three violations, any of the three statutes, and we don't have to show that there was a case on point in our favor that had come down in the past. All we have... the facts of previous cases need not be materially similar, and as we know from the Hope case... I know, but what case do you have that would have alerted her to the unconstitutionality of arresting him for obstruction, given his behavior? Oh, okay. Let me skip ahead to that, and... No, we're not skipping ahead. That's where we're at. Okay. You're on probable cause for arrest, and I'm asking you to assume that there was no probable cause for arrest, but still, isn't she entitled to qualified immunity? No, she isn't, because under the facts of the case, she did not have... a reasonable officer would not have thought that Mr. Deskins was obstructing. First of all, when he steps up... In your last case, again, you were going to give us that, even though you were trying to skip to it? Because I... I'm very comfortable with my colleagues' questions. Sure. I think it turns... I mean, this officer's got to have some reason to believe she can't do what she's doing, even if she doesn't have the probable cause that you... We're giving you that, but we've got to find a case that helps you then, because the second prong is pretty important. It is. The second prong is important, and I do not have a case exactly on point saying that obstructing on those facts, an arrest can't take place. However, if you look at the actual facts of this case, the state argues that he was disobeying orders. He stepped outside his car, a trooper told him to get back in, and he complied, possibly within one second. Officer Bates told Mr. Deskins to place his hands outside his car window, and he complied. Bates told Mr. Deskins to put his hands in the air after he got out of the car, and he told Mr. Deskins to turn away from the officer, and he did, within two to three seconds. And this is all their testimony I'm relying on, not Mr. Deskins. Bates told Mr. Deskins to lift his coat collar up, and Mr. Deskins did that within several seconds. Bates told Mr. Deskins to raise his hands over his head, and he did that within several seconds, and that's all from the police officers. They... You know, I you can tell Mr. Deskins is retired. He maybe doesn't have reflexes like an Olympics athlete, but look at all those commands, and if you look at the sections of their depositions, which are in the record, in which I've cited, you'll see that he did everything they told him to. And furthermore, he did pull over. There's... You know, he pulled over to where he thought it was a safe place, but there's nothing in the statute that says you have to pull over immediately, and I said people must stop immediately under some statutes, but not under the failure to stop statute. So the answer, long-winded answer to your question, Judge Reimer, is if there is no act of obstructing at all, no reasonable officer could think that there was probable cause to arrest for obstructing. I mean, we're talking about one, two, three, four, five, six, six different orders he complied with, all according to the officers, within a couple of seconds. Now, all right. So be it. Thank you. Thank you. Your time is up. Okay. Thank you. Good morning, Your Honors. May it please the Court, I'm Ken Orcutt. I represent Krista Hedstrom in this matter. In this case, there were three grounds upon which to arrest Mr. Deskin's three crimes. There was probable cause for failure to obey a police officer in DWI. Prior Ninth Circuit precedent, namely United States versus Santa Maria Hernandez in 1992 case, holds that you don't have a seizure under the Fourth Amendment if you have a situation where you try to stop somebody for a traffic offense and the person doesn't stop and keeps going into a pursuit situation. In our case here, we had Trooper Hedstrom activating her overhead lights and Mr. Deskin's continuing for one mile, not pulling over. And then at that point, Trooper Hedstrom activated her siren and they went another mile before he finally did stop on the Austin Way exit. He was going about 50 miles an hour during this time period. So we're talking about over a two-minute time period where Mr. Deskin's did not obey the police officer. And we know that Mr. Deskin's was aware that Trooper Hedstrom was behind him because as soon as she activated her overhead lights, that's when he switched from the left lane to the right lane. So under Ninth Circuit prior precedent, we can take into account that fact in determining whether there was reasonable suspicion and whether there was probable cause for arrest. And in this case, under Washington Revised Code 4661, 021, and 022, it's a misdemeanor to fail to stop when a trooper tries to make a traffic stop and you don't do that. There's plenty of reasonable suspicion here and probable cause to believe that Mr. Deskin's was disobeying the police officer. Now under Washington law, the is limited. You can only stop them so long as you to basically check out and give them a ticket. But under Virginia v. Moore and also recent Ninth Circuit precedent, the Edgerly case that's attached to our brief, that does not control over the Fourth Amendment. It's a national standard on whether the Fourth Amendment has been violated. And because under Washington law, it's a misdemeanor to fail to obey the police officer, to fail to pull over, it's not the Fourth Amendment authorizes the arrest for that offense in this case. So that's one misdemeanor that Mr. Deskin's committed that there's probable cause to arrest and also reasonable suspicion to make the stop in the first place. We've also already talked, I think, covered the obstruction element here that we have a Washington State case that talks about obstruction that's very has been able to cite any case, any Washington authority that really contradicts that. And in this case, it's not just that the case, the record's not limited to Mr. Deskin's obeying the officers. And in fact, not only did Mr. Deskin's not obey the police officers by not pulling over within two miles, but once the stop was made, the record is uncontradicted that Mr. Deskin's exited his vehicle without permission of the police officer. Once he exited the police officer, Trooper Hedstrom said, put up your hands. Mr. Deskin's did not do that. Instead, he got back into the car. And then once he was in the car, he was slow to respond to the officer's commands. And in some regard, he explains that by saying, well, I didn't hear what they were saying at first, but that he was supposed to put his hands on the ceiling. He was asked to do that at one point. And instead, Mr. Deskin's bent down and was like between the console and the seats, like he was searching for something. So he did not obey the police officer's command. But I say sometimes he did, sometimes he didn't. But that would certainly be a basis overall, considering Mr. Deskin's behavior from when the stop was first initiated as being a basis for DUI. In our case, it's uncontradicted. Mr. Deskin's was weaving within his lane. Once the stop was made, the evidence is uncontradicted that when Mr. Deskin's exited the vehicle, he had to grab on the door because he almost fell down. We have this behavior at the scene of where Mr. Deskin's, again, is slow to respond to the police officers. We have this being the early morning hours after a New Year's holiday weekend, a holiday that is associated with drinking. So we have probable cause for DUI as well. So there's probable cause in this case. There is reasonable suspicion to make the stop in the first place. And the third issue, which we haven't touched on, is whether the display of the weapon by Trooper Hedstrom constituted excessive force. We submit that it does not, because in this case, there is no evidence that Mr. Deskin's ever saw the weapon. The lights were shining on him, and his testimony was that he never laid eyes on Trooper Hedstrom until he had been handcuffed and placed in Trooper Hedstrom's patrol car. Is it the law that using a weapon is, per se, an arrest? No, Your Honor, that is not the law. It was argued by the other side I saw in the briefs, but you do not agree with that? Do not. And in fact, the district court cited prior precedence to saying that an officer is justified in displaying a weapon to try to control a situation when there's a reasonable officer perceives an immediate threat, possible threat. And in this case, we have that. We have Trooper Hedstrom making the stop in early morning hours. He's alone. There's no other driver than she is. And of course, she's observed his odd behavior of not stopping for several miles after she initiates the traffic stop. We have him almost falling down when he exits the car. So she has plenty of reason to be concerned. She doesn't know whether he's armed, doesn't know who he is when he comes out of the car without being asked to do so. So she had a reasonable basis to believe that she was being threatened. So that has not converted into arrest at that point. And unless the court has any questions, I'm content to rest on the brief. No further questions. Thank you. Thank you, Your Honors. And you've used your time. Thank you very much. Case 0935519 is submitted.
judges: Hart, Rymer, Smith N. R.